UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICRON TECHNOLOGY, INC., a Delaware corporation; and MICRON SEMICONDUCTOR PRODUCTS, INC., an Idaho corporation,<br><br>           Plaintiffs,<br><br>v.<br><br>NETLIST, INC., a Delaware corporation,<br><br>           Defendant. | Case No. 1:24-cv-00001-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are a Motion to Remand (Dkt. 14) and a Motion to Seal (Dkt. 21) filed by Plaintiffs Micron Technology, Inc., and Micron Semiconductor Products, Inc. (together, "Micron"), and a Motion to Dismiss or Transfer (Dkt. 17) filed by Defendant Netlist, Inc. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court GRANTS Micron's Motion to Remand and Motion to Seal and, accordingly, deems Netlist's Motion to Dismiss MOOT.

## II. BACKGROUND

### A. Factual Background

Micron is a manufacturer of semiconductors headquartered in Boise, Idaho. Netlist designs and manufactures a wide variety of computing products and possesses an extensive patent portfolio. It is headquartered in Irvine, California.

In or around 2018, Netlist sued Micron for violating U.S. Pat. No. 8,874,831 (the "'831 Patent"). The Patent Trial and Appeal Board (the "PTAB") conducted *inter partes* review of the patent and found it to be invalid.[1]

Roughly three years later, Netlist sued Micron for violation of another patent—U.S. Pat. No. 8,301,833 (the "'833 Patent").[2] At another administrative trial, the PTAB determined that, like the '831 Patent, the '833 Patent was invalid.

### B. Procedural Background

On December 11, 2023, Micron filed suit against Netlist in Idaho state court, alleging that Netlist's attempted assertion of the '833 Patent was brought in bad faith, violating the Idaho Bad Faith Assertions of Patent Infringement Act (the "Act"). Idaho Code § 48-1701 *et seq*. Specifically, Micron asserted that Netlist knew the '833 Patent was

---

[1] *Inter partes* review "begins when a person other than the patent owner files a petition with the [USPTO], which is ultimately reviewed by the [PTAB]." 152 Am. Jr. Trials 349, § 3 (Originally published in 2017). *Inter partes* review typically involves a party who has been sued for patent infringement. *Id.* That party petitions the PTAB, requesting a finding that the patent asserted against them be canceled "as being not novel under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 based on prior art . . . ." *Id.* The duty of the PTAB in an *inter partes* review is to decide whether a contested patent is valid. *Id.* at § 15.

[2] Netlist filed its suit against Micron for violation of the '833 patent in the United States District Court for the Western District of Texas. *Netlist, Inc. v. Micron Technology, Inc. et al.*, Case No. 1:22-cv-00134-DII (W.D. Tex). The Western District of Texas litigation is currently stayed. Dkt. 17-1, at 11.

MEMORANDUM DECISION AND ORDER – 2

invalid because of its similarities to the '831 Patent—the patent the PTAB had previously found invalid.

Shortly thereafter, Netlist removed the action, claiming this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338, or alternatively under 28 U.S.C. § 1442(a)(2). Dkt. 1. Micron subsequently moved the Court to remand the case back to state court, contending that neither of Netlist's asserted grounds, nor any other grounds, afford the Court subject matter jurisdiction. Dkt. 14. Micron also requested an award of the attorney's fees and costs it has incurred due to Netlist's improper removal. Dkt. 14-1, at 24.

Less than a month after Micron filed its Motion to Remand, Netlist filed its Motion to Dismiss, asking the Court to either dismiss this case, or to transfer it to the Western District of Texas, where Netlist's attempt to enforce its '833 patent is currently pending. Dkt. 17-1. Micron responded, and simultaneously moved the Court to seal various portions of its response and other exhibits because they contain sensitive business information and information about settlement negotiations. Dkt. 21.

### III. LEGAL STANDARDS

**A. Jurisdiction Under 28 U.S.C. §§ 1331 and 1338**

Under 28 U.S.C. § 1331, federal district courts have subject matter jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." Pursuant to 28 U.S.C. § 1338(a), this jurisdiction extends to "any civil action arising under any Act of Congress relating to patents[.]" Further, § 1338(a) makes clear that federal subject matter jurisdiction over actions arising from acts relating to patents is exclusive. *Id.*

"For statutory purposes, a case can arise under [patent] law in two ways. Most

directly, a case arises under [patent] law when [patent] law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). However, in certain circumstances, "a claim may arise under patent laws even where patent law did not create the cause of action . . . ." *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1333 (Fed. Cir. 2013) (cleaned up).[3] Such circumstances exist where the action involves a patent law issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Notably, the Supreme Court describes this category of cases as "special and small." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

### B. Jurisdiction Under 28 U.S.C. § 1442(a)(2)

Section 1442(a) allows "owners of federally derived property rights to remove a cause of action to federal court—even where a federal officer is not a defendant—if the action 'affects the validity of any law of the United States.'" *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 647 (Fed. Cir. 2015) (quoting § 1442(a)(2)). Proper removal under § 1442(a)(2) requires that "(1) an action be instituted in state court; (2) the action be against or directed to the holder of a property right; (3) the property right be derived from a federal officer; and (4) the action would 'affect' the validity of a federal law." *Id.*

---

[3] Whether an action arises under the scope of § 1338 "presents an issue that is unique to patent law." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016). Courts should rely on Federal Circuit law, and not state or regional circuit law, when evaluating such issues. *See, e.g., id.*

MEMORANDUM DECISION AND ORDER – 4

### C. Sealing

The public has a general right to "inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right, however, is not absolute. *Id.* at 598. Certain public records—like grand jury transcripts and warrant materials related to pre-indictment investigations—are "traditionally kept secret," and are entirely exempt from the public's right to access. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up). When dealing with documents that fall outside of the "traditionally kept secret" category, Courts strongly presume accessibility. *Id.*

A party seeking to seal non-secret documents must proffer "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure[.]" *Id.* at 1178–79 (cleaned up). A court that decides to seal typically accessible documents "must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179.

Courts have typically found it appropriate to seal documents that may serve as "sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. It is also common for courts to seal documents that disclose settlement discussions. *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) ("[C]ourts have granted protective orders to protect confidential settlement agreements."). This is because "[c]onfidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and

presumably result in greater satisfaction to the parties." *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993). Thus, "[s]ound judicial policy fosters and protects this form of alternative dispute resolution." *Id.*; *see also* Fed. R. Evid. 408 (protecting settlements and settlement offers from use to prove liability).

## IV. ANALYSIS

The Court will first analyze whether it has jurisdiction under 28 U.S.C. §§ 1331 and 1338. Next, it will discuss whether it has jurisdiction under 28 U.S.C. § 1442(a)(2). Then, the Court will turn to Micron's Motion to Seal. Finally, the Court will briefly address Micron's request for attorney's fees and Netlist's Motion to Dismiss or Transfer.

### A. Jurisdiction Under 28 U.S.C. §§ 1331 and 1338

Netlist's primary removal argument is that this case falls into the "special and small" category of cases wherein a claim arises under patent law even though patent law does not create the cause of action. Dkt. 18, at 8–10. As already noted, to agree with Netlist, the Court must find that a patent law issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (hereinafter "*Gunn* Prongs"). The Court considers each of the *Gunn* Prongs in turn.

#### 1. Whether a Patent Law Issue is Necessarily Raised

In *Globetrotter Software, Inc. v. Elan Comput. Group, Inc.*, 362 F.3d 1367, 1376–77 (Fed. Cir. 2004), the Federal Circuit made clear that success under a state bad-faith statute requires a plaintiff to show that the challenged assertion was "objectively baseless." This means "no reasonable litigant could realistically expect success on the merits." *Id.*

(cleaned up). Further, a plaintiff bringing a state-law bad-faith claim must make this showing even if objective baselessness is not otherwise an element of the state-law tort claim. *Id.* at 1374. Otherwise, the claim is subject to federal preemption. *Id.* Questions of objective baselessness, in turn, revolve around patent validity and infringement, and clearly raise patent law issues. *See Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018).

Here, Micron claims that because the PTAB has already found the '833 Patent to be invalid, there is no issue of patent law remaining. Dkt. 19, at 7–10. However, a finding of *invalidity* is not equivalent to a finding of *objective baselessness*. In this case, the reviewing court will not need to rehash the PTAB's finding that the '833 Patent is invalid. But it will need to determine whether a reasonable litigant could *realistically believe* the '833 Patent *was* valid and could *realistically believe* that Micron infringed thereon. The PTAB's decision answered neither of those questions, and assessing them will require the reviewing court, at least peripherally, to consider the validity of the '833 Patent (an issue of patent law). Accordingly, this case necessarily raises a patent law issue.

### 2. Whether a Patent Law Issue is Actually Disputed

The parties dispute whether a reasonable litigant could realistically believe the '833 patent was valid. As elucidated in *Globetrotter*, Micron *must* allege and ultimately prove a reasonable litigant could not realistically believe the '833 patent was valid to assert a claim under the Act. 362 F.3d at 1374. And, in its briefing, Netlist affirms that its assertion of the '833 Patent was brought in good faith.

Micron again raises its argument that because the PTAB found the '833 Patent to

MEMORANDUM DECISION AND ORDER – 7

be invalid, no issue of patent law is or can be actually disputed here. But as the Court stated above, the PTAB's invalidity determination is necessary, but not sufficient, to establish objective baselessness. Thus, Micron's argument fails.

Because the parties dispute an issue of patent law, this second requirement for jurisdiction under 28 U.S.C. § 1338 is satisfied.

### 3. Whether the Patent Law Issue is Substantial

For an issue to be sufficiently substantial under the test from *Gunn*, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue . . . ." 568 U.S. at 260. Instead, courts are to look "to the importance of the issue to the federal system as a whole." *Id.* An issue is important to the federal system as a whole where it presents "potential for inconsistent judgments between state and federal courts." *Maxchief*, 909 F.3d at 1140 n.3. This potential must be based on real-world patent litigation results, not hypothetical inconsistencies. *Gunn*, 568 U.S. at 261–62.

Here, Netlist argues that allowing a state court to preside in this case creates a risk of inconsistent judgments between state and federal courts. Dkt. 18, at 20–22. Specifically, Netlist notes that in the underlying patent case regarding the validity and infringement of the '833 Patent in the Western District of Texas, Micron is seeking attorney's fees and costs pursuant to 35 U.S.C. § 285. *Id.* It then cites to *New Life Ventures, Inc. v. Locke Lord LLP*, 2019 WL 13212632 (E.D. Tex. Sept. 27, 2019), wherein New Life Ventures, Inc. ("New Life") was denied attorney's fees after successfully defending an infringement allegation, then subsequently asserted a claim of malicious prosecution under Florida law. *Id.* at *1. The

MEMORANDUM DECISION AND ORDER – 8

case was removed to federal court, then transferred to the Eastern District of Texas—the court that presided over the underlying patent infringement suit. The Eastern District of Texas found that the malicious prosecution claim raised substantial federal issues in part because the standard governing New Life's malicious prosecution claim mirrored the standard for attorney's fees under § 285 *and* because the Eastern District of Texas had already determined that New Life fell short of that standard. *Id.* at *3. Thus, "[r]esolution of New Life's claim would require a reopening of the issues already decided under § 285." *Id.*

The applicability of *New Life* to the facts at hand is limited in two significant ways. First, the burden imposed by the fee-shifting provision in § 285 is *not* the same as the standard imposed under Idaho's bad-faith assertion law—it is lower. *See Katana Silicon Techs. LLC v. Micron Tech., Inc.*, 671 F. Supp. 3d 1138, 1153–54 (D. Idaho 2023); *see also* 35 U.S.C. § 285 (allowing fee-shifting in "exceptional cases"); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014) (stating that establishing the exceptionality of a case for purposes of fee shifting requires "something less than bad faith") (cleaned up). Second, and more importantly, the underlying patent case between Micron and Netlist has been stayed without any ruling on Micron's motion for attorney's fees. Dkt. 19, at 11. Thus, as it stands, there is no real-world result that an Idaho court could contradict a prior ruling in a federal case by ruling on Micron's bad-faith claim.

Netlist urges the Court to take a softer approach in this analysis. It argues that the possibility of inconsistent judgments is sufficient to establish a substantial federal issue worthy of jurisdiction under § 1338. Dkt. 18, at 16–17. For example, it is hypothetically possible that the Western District of Texas denies attorney's fees while an Idaho state court

finds Netlist liable under the Act. But possibilities are not enough. The court in *New Life* made this clear when it distinguished the facts there from the facts in *Gunn*, stating: "In *Gunn*, the Supreme Court found that a malpractice claim stemming from a patent infringement suit did not raise a significant federal issue in part because resolution of the claim would 'not change the real-world result of the prior federal patent litigation.'" *New Life*, 2019 WL 13212632, at *3 (quoting *Gunn*, 568 U.S. at 261). "By contrast," the court continued, "New Life expressly seeks to overturn a result of the prior federal patent litigation—denial of its attorney's fees." *New Life*, 2019 WL 13212632, at *3. This case is more like *Gunn* than *New Life* for the simple reason that there is no prior federal patent decision relevant to the inquiry at hand. Further, adopting Netlist's approach would mean finding a substantial federal issue to be present in *any instance* where a state court and a federal court are ruling on similar, but distinct, questions, and the federal court has yet to rule. It is the opinion of the Court that such a course would stretch the Supreme Court's standard from *Gunn* a bridge too far.

Next, Netlist contends that Micron's assertion of bad faith directly contradicts the findings of the PTAB. Dkt. 18, at 16. It invokes language from the PTAB's decision on the validity of the '833 Patent wherein the PTAB stated that the '833 Patent is not identical to the '831 Patent (though it ultimately found the '831 patent invalid). *Id.* Netlist relies on this language to assert that if an Idaho court were to decide in favor of Micron, its decision would conflict with the PTAB. However, this argument falls flat because the '833 Patent need not be identical to the '831 Patent for Netlist's assertion of the '833 Patent to be deemed objectively baseless. It is entirely plausible that one patent can be distinct from

another while still being similar enough that invalidation of the one should inform the asserting party that the other is also likely invalid.

Finally, Netlist raises generalized fears that state laws like the Act are incompatible with federal patent law and may "add additional, divergent, and potentially more stringent requirements to bring a federal lawsuit for patent infringement than those already imposed by federal law." Dkt. 18, at 17 (quoting *New Life*, 2019 WL 13212632, at *4). But Netlist's speculative fears were adequately addressed in *Gunn*. There, the Supreme Court noted that federal courts are not bound by state-court resolution of patent-adjacent questions. 568 U.S. at 262. It also opined that if a particular question of patent law that first arises in a state court is truly substantial, it will arise with enough frequency to eventually be settled by the Federal Circuit. *Id.*; *see also Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 938 F.3d 1355, 1364–69 (Fed. Cir. 2019). Further, in *Katana*, this Court addressed the consistency of the Act with federal patent law *ad nauseum*. 671 F. Supp. 3d at 1153–61. For reasons outlined both in *Katana* and herein, the Court does not share Netlist's fears.

Whether Netlist's assertion of the '833 Patent was objectively baseless is not an issue of importance to the federal system as a whole. It raises no potential for inconsistent judgments between state and federal courts and, contrary to Netlist's assertions, allowing a state court to decide the issue will not cast federal patent law into disarray. Netlist has failed to satisfy this third requirement for the exercise of jurisdiction under 28 U.S.C. § 1338. Thus, under *Gunn*, jurisdiction does not lie. 568 U.S. at 258 (explaining federal jurisdiction over a state law claim will lie only if "all four" of the *Gunn* Prongs are met).

### *4. Whether Removal Would Disrupt the Federal-State Balance*

Finally, even if Netlist had satisfied the substantiality prong, its removal attempt would buckle under the final, federal-state balance prong. States have a legitimate interest in protecting their citizens from unsavory business practices. Like the Federal Circuit, the Court notes that finding a federal question simply because a dispute "implicates a run-of-the-mill question of infringement or validity would undoubtedly impact the wider balance between state and federal courts." *Inspired Dev. Grp.*, 938 F.3d at 1369. The Federal Circuit elaborated that adoption of such a course would mean "a plaintiff could create a federal jurisdictional hook to avoid state court in any case involving almost any state law claim by doing little more than pleading allegations that involve an embedded infringement or validity analysis." *Id.* This would clearly upset the existing balance between state and federal courts. *See Katana*, 671 F. Supp. 3d at 1150 (noting that more than half of states have adopted statutes outlawing bad-faith patent assertion). It is for this reason that courts regularly decline "to find federal question jurisdiction notwithstanding the presence of an underlying issue of patent law." *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1348 (Fed. Cir. 2015) (collecting cases).

The logic from *Inspired Dev. Grp.* readily applies here. 938 F.3d at 1364–70. The patent issues disputed by Micron and Netlist are run-of-the-mill and they impact Micron and Netlist alone. Allowing federal jurisdiction over such issues would disrupt the federal-state balance that currently prevails.

### *5. Conclusion*

Micron's bad faith claim necessarily raises an issue of patent law—whether Netlist's

MEMORANDUM DECISION AND ORDER – 12

assertion of the '833 Patent was objectively baseless. Here, the parties dispute that issue. However, because the issue is neither substantial, nor capable of resolution in federal court without disrupting the currently prevailing federal-state balance, the Court cannot exercise jurisdiction under 28 U.S.C. §§ 1331 and 1338.

### B. Jurisdiction Under 28 U.S.C. § 1442(a)(2)

The Court turns next to whether it can exercise subject matter jurisdiction under 28 U.S.C. § 1442(a)(2). The parties do not dispute that this action was instituted in state court, that it is directed against the holder of a property right, or that the property in question derives from a federal officer. Their disagreement centers on whether the action affects the validity of any federal law.

A lawsuit affects the validity of a federal law where it "would evade . . . or otherwise frustrate [the law's] aims." *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053–54 (W.D. Wash. 2021). Netlist claims that Micron's suit "directly conflicts with federal law concerning what patent holders can do with their intellectual property." Dkt. 18, at 21 (cleaned up). It argues further that by bringing suit under the Act, Micron is attempting to impose liability upon Netlist without making the objective baselessness showing required by *Globetrotter*. *Id.*

Regarding the alleged conflict between the Act and federal patent law, the Court addressed this exact contention in *Katana*, ultimately holding that "[t]he Act has the same essential purposes as the Patent Act and goes no further than its federal counterpart in pursuing them." *Katana*, 671 F. Supp. 3d at 1154. The Court then stated conclusively, "[t]here is no conflict of purpose or objective here." *Id.* Later, the Court stated "[t]he Act

does not intrude on Congress' exclusive right to grant patents. Nor does it alter any policy line that congress has expressly drawn . . . . Because the Act is not inconsistent with Congress' express policies, the Court finds that it is not an obstacle to them." *Id.* at 1155. Netlist has not offered any argument to cause the Court to reconsider its prior reasoning.

With respect to Netlist's claim that Micron is attempting to impose liability without first making the showing required by *Globetrotter*, the Court begins by noting that Micron has expressly disavowed this allegation. Dkt. 19, at 13 n.7 ("Micron is not attempting to hold Netlist liable without showing objective baselessness."). More importantly, in *Globetrotter*, the Federal Circuit made clear that a bad-faith requirement—which is satisfied by a showing of objective baselessness—is essentially baked-in to any state law imposing liability on a patentholder for communications asserting infringement. 362 F.3d at 1374. Thus, even if the Act does not use the words "objectively baseless," Micron's burden under the statute is no lighter than required under *Globetrotter*.

Because the Act is consistent with federal patent law and is not somehow allowing Micron to skirt the rules, the Court finds that Micron's claim does not affect the validity of any federal law. Accordingly, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1442(a)(2).

**C. Sealing**

In Netlist's Motion to Dismiss or Transfer (Dkt. 17), it argues, among other things, that Netlist's contacts with the state of Idaho are insufficient to justify the Court's exercise of personal jurisdiction. Dkt. 17-1, at 12–18. In response, Micron—which is headquartered in Idaho—contends that its extensive settlement discussions with Netlist and the parties'

negotiations over a potential license of a Netlist patent portfolio constitute sufficient grounds from which an Idaho federal court could exercise personal jurisdiction. Dkt. 20, at 8.

Because the Court has determined it lacks subject matter jurisdiction, it need not wade into these questions of personal jurisdiction. *See, e.g.*, *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) *and* power over the parties before it (personal jurisdiction) before it can resolve a case.") (emphasis added). However, Micron has asked the Court to seal portions of its response and the attachments thereto that contain sensitive business information and information about settlement discussions. Dkt. 21. Specifically, it asks the Court to seal portions of its Response, Portions of the Declaration of Rebecca Carrizosa in support of its Response (the "Carrizosa Declaration"), and Exhibits B–Y to the Carrizosa Declaration (the "Carrizosa Exhibits"). Dkt. 21-1, at 3–4.

The Court has reviewed Micron's Response, the Carrizosa Declaration, and the Carrizosa Exhibits. The Court finds that the documents and portions of documents that Micron seeks to seal contain sensitive business information about both parties and discuss settlement negotiations in detail. Disclosure of such information could negatively impact the competitive standing of both parties. *See Nixon*, 435 U.S. at 598. Further, the Court notes the public's significant interest in preserving the confidentiality of settlement discussions. *See, e.g.*, *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993). Maintaining the confidentiality of settlement negotiations promotes timely and satisfactory conflict resolution. *Id.* Here, that interest outweighs the public interest in document inspection.

For the foregoing reasons, the Court finds that Micron has asserted compelling, fact-

supported reasons for sealing the specified documents. Accordingly, Micron's Motion (Dkt. 21) is GRANTED.

### D. Attorney's Fees

In its Motion to Remand, Micron requested attorney's fees. Dkt. 14-1, at 24. Pursuant to 28 U.S.C. § 1447(c), when a federal court remands a case back to state court after removal, an award of attorney's fees may be appropriate. In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), the Supreme Court stated fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." The Ninth Circuit has elaborated on this standard, stating, "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, courts are to consider whether "relevant case law clearly foreclosed the defendant's basis of removal." *Id.* at 1066.

Caselaw interpreting the Act is relatively sparse; and as far is the Court is aware, this is the first time a party has attempted to remove a claim for violation of the Act from state court to federal court. Thus, the Court would be hard-pressed to find that relevant case law clearly foreclosed Netlist's basis for removal. *See id.* While the Court ultimately found that basis to be unsound, it cannot say that it was objectively unreasonable. Accordingly, the Court DENIES Micron's request for attorney's fees.

### E. Netlist's Motion to Dismiss or Transfer

Because the Court has determined that it does not have jurisdiction over this case,

MEMORANDUM DECISION AND ORDER – 16

it must remand this case back to state court. 28 U.S.C. § 1447(c). Accordingly, it DENIES Netlist's pending Motion to Dismiss or Transfer (Dkt. 17) as MOOT. Netlist is free to raise its arguments regarding personal jurisdiction and/or transfer before the state court.

## V. CONCLUSION

Regarding Micron's Motion to Remand (Dkt. 14), the Court finds that Micron's bad faith claim necessarily raises an issue of patent law, and that issue is actually disputed by the parties. However, the issue is not substantial, nor capable of resolution without disrupting the federal-state balance. Accordingly, the Court does not have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338. Further, because the Act does not affect the validity of federal patent law, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1442(a)(2). Thus, Micron's Motion to Remand is GRANTED.

Regarding Micron's Motion to Seal (Dkt. 21), the Court finds that Micron has shown compelling, fact-supported reasons to justify sealing the materials specified herein. Accordingly, Micron's Motion to Seal is GRANTED.

Additionally, the Court finds that because relevant caselaw (to the extent any existed) did not clearly foreclose Netlist's removal of this case, an award of attorney's fees is inappropriate.

Finally, because the Court lacks subject matter jurisdiction over this case, it DENIES Netlist's pending Motion to Dismiss or Transfer (Dkt. 17) as MOOT.

## VI. ORDER

The Court **HEREBY ORDERS**:

    a. Micron's Motion to Remand (Dkt. 14) is **GRANTED**.

      i. This case is remanded to the District Court for the Fourth Judicial District of the State of Idaho, County of Ada.

b. Netlist's Motion to Dismiss or Transfer (Dkt. 17) is **DENIED AS MOOT**.

c. Micron's Motion to Seal (Dkt. 21) is **GRANTED**.

d. This case is **CLOSED**.

DATED: August 13, 2024

David C. Nye  
Chief U.S. District Court Judge